United States District Court
Middle District of Florida
Jacksonville Division

**BRIDGET DANIELLE WOODLE,**

    *Plaintiff,*

v.                                           NO. 3:19-CV-518-J-34PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

# Report and Recommendation

Bridget Danielle Woodle brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits.

Under review is a decision by an Administrative Law Judge ("ALJ").[1] Tr. 10–23. Woodle seeks vacatur of the decision and remand for further administrative proceedings. Doc. 12. The Commissioner seeks affirmance. Doc. 13.

---

[1]The Social Security Administration ("SSA") uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of a denial of benefits. *Bowen v. City of New York*, 476 U.S. 467, 471−72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 404.900−404.906. If dissatisfied with that determination, the claimant may ask for reconsideration. 20 C.F.R. §§ 404.907−404.918. If dissatisfied with the reconsideration determination, the claimant may ask for a hearing before an ALJ. 20 C.F.R. §§ 404.929−404.943. If dissatisfied with the ALJ's decision, the claimant may ask for review by the Appeals Council. 20 C.F.R. §§ 404.967−404.982. If the Appeals Council denies review, the claimant may sue in federal district court seeking review of the ALJ's decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

I.  **Background**

Woodle was born in 1980 and was 37 years old when last insured. Tr. 21, 22, 178. She has a high-school education and experience as an accounting clerk. Tr. 21, 50. She alleges she became disabled from low blood pressure, blurred vision, heart palpitations, supraventricular tachycardia ("SVT") episodes (i.e., an abnormally fast heartbeat), headaches, exhaustion, fatigue, diarrhea, pseudotumor cerebri (i.e., a condition that causes the same symptoms as a brain tumor—headaches, vision problems, nausea, and dizziness—but is not a tumor), an inability to get a good night's sleep, anxiety, and depression. Tr. 71, 199, 201, 205.

Woodle testified she appears normal, her doctors think she is stupid and there is nothing wrong with her, and even her husband does not understand, but her symptoms are hard to explain, and she feels like she is having a heart attack all the time. Tr. 47–48.

Woodle proceeded through the administrative process, failing at each level. Tr. 1–6, 7–23, 89–91, 93–97. This action followed. Doc. 1.

II.  **ALJ's Decision**

The ALJ conducted a hearing on April 25, 2018. Tr. 36–54. Woodle was represented by counsel. Tr. 38.

The alleged onset date is December 21, 2013, and Woodle is insured through December 31, 2017. Tr. 12, 201. The pertinent period therefore is December 21, 2013, through December 31, 2017. The ALJ entered the decision under review on July 12, 2018. Tr. 10–23. In the decision, the ALJ proceeded through the five-step sequential process.[2]

---

[2]The SSA uses a five-step sequential process to decide if a person is disabled, asking whether (1) she is engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, (3) the impairment or combination of

At step one, the ALJ found Woodle had not engaged in substantial gainful activity during the pertinent period.[3] Tr. 13.

At step two, the ALJ found Woodle had had severe impairments of arrhythmia, pseudotumor cerebri, coronary artery disease, and obesity during the pertinent period. Tr. 13. The ALJ found Woodle had had non-severe impairments of carpal tunnel syndrome, back impairment, and anxiety during that time. Tr. 13–15.

The ALJ explained Woodle's carpal tunnel syndrome had been non-severe because although Woodle had had mild to moderate median neuropathy in her right wrist, she had undergone release surgery, she had reported a "positive response" to the surgery, and a follow-up appointment shows normal findings. Tr. 13.

The ALJ explained Woodle's back impairment had been non-severe because although images of her lumbar spine show degenerative disc space narrowing at L4-L5 and L5-S1, they also show normal vertebral alignment, normal height and density of the vertebral bodies, unremarkable posterior elements, normal intervertebral disc spaces, an intact sacrum, no evidence of trauma, and no destructive lesions. Tr. 13. The ALJ added that recent examinations show normal musculoskeletal findings, normal strength, and normal range of motion. Tr. 13.

---

impairments meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) she can perform any of her past relevant work given her residual functional capacity, and (5) there are a significant number of jobs in the national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

[3]Social-security regulations explain, "[W]ork you have done will not show that you are able to do substantial gainful activity if, after you worked for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level[.]" 20 C.F.R. § 404.1574(c).

Here, the ALJ observed Woodle had worked in 2014, earning $654.41, and in 2015, earning $688.28, but her earnings were too low for her work to constitute substantial gainful activity. Tr. 13.

3

The ALJ explained Woodle's anxiety had been non-severe because the state-agency medical consultant—Dr. Lee Reback—found Woodle's anxiety had not been severe, and Dr. Reback's finding is consistent with treatment records "that are negative for psychological symptoms." Tr. 13. The ALJ pointed to records from Baptist Medical Center and Baptist North showing appropriate mood and affect and cooperative interactions. Tr. 13. The ALJ pointed to records from Mayo Clinic showing normal psychiatric findings. Tr. 13. And the ALJ pointed to Woodle's testimony that she was experiencing no depression,[4] can perform chores, can care for her children, and can "function normally, as permitted by symptoms attributable to her severe impairments." Tr. 14.

The ALJ considered the "paragraph B" criteria.[5] Tr. 13–14.

For the first criterion—understanding, remembering, or applying information—the ALJ found Woodle had had a mild limitation during the pertinent period. Tr. 14. The ALJ observed Woodle alleges she has trouble remembering generally and completing tasks but "appears to associate these with her pseudotumor cerebri symptoms" and not with an "underlying mental health issue." Tr. 14. The ALJ pointed to Woodle's statements that she can "perform simple maintenance, prepare meals, pay bills, go to doctor's appointments, shop, and drive," and also pointed to records showing she had been able to provide information about her health, describe

---

[4]More precisely, Woodle testified she is "not depressed when [she feels] good." Tr. 48.

[5]The SSA uses the "paragraph B" criteria to assess functional limitations imposed by medically determinable mental impairments. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(C). The SSA considers the claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3) (citing 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00E). To satisfy the "paragraph B" criteria, the mental impairment must result in "an 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(A)(2)(b). The limitations found when assessing the "paragraph B" criteria are not an RFC assessment. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). A mental RFC assessment "requires a more detailed assessment by itemizing various functions." *Id*.

her work history, follow instructions from healthcare providers, and comply with treatment outside a doctor's office or hospital. Tr. 14.

For the second criterion—interacting with others—the ALJ found Woodle had had no limitation during the pertinent period. Tr. 14. The ALJ explained Woodle alleges no problems in this area, pointing to her statements that she can spend time with friends and family, deal appropriately with authority, and live with others. Tr. 14. The ALJ explained records show she had "had a good rapport with providers and was described as pleasant and cooperative, with multiple entries documenting her normal mood and effect." Tr. 14.

For the third criterion—maintaining concentration, persistence, and pace—the ALJ found Woodle had had a mild limitation during the pertinent period. Tr. 14. The ALJ observed Woodle alleges she has limitations in concentrating generally, but she also reports she can drive, prepare meals, manage funds, and handle her own medical care, "as permitted by her pseudotumor cerebri symptoms." Tr. 14. The ALJ stated his finding is consistent with an assessment by Charles Thompson, M.D., who had not listed anxiety or depression among diagnoses. Tr. 14.

For the fourth criterion—adapting or managing oneself—the ALJ found Woodle had had a mild limitation during the pertinent period. Tr. 14. The ALJ observed Woodle alleges no symptoms or limitations in this area, pointing to her reports that she can "handle self-care and personal hygiene and care for children." Tr. 14. The ALJ added that evidence shows she had had "appropriate grooming and hygiene" and normal mood and affect during appointments. Tr. 14.

At step three, the ALJ found Woodle had had no impairment or combination of impairments that meets or medically equals the severity of any impairment in the

listing of impairments during the pertinent period.[6] Tr. 15; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments).

For the residual functional capacity ("RFC"),[7] the ALJ found Woodle had had the RFC during the pertinent period to perform only sedentary work[8] further limited to performing only simple, unskilled, repetitive work; climbing stairs only occasionally; avoiding ladders, ropes, and scaffolds; avoiding driving motorized vehicles; avoiding moving or hazardous machinery; and avoiding work around protected heights. Tr. 15.

The ALJ stated, "In making this finding, [he] … considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and the opinion evidence. Tr. 15.

The ALJ described the evidence in detail. Tr. 16–18. The ALJ observed Woodle's medical history documents "issues with headaches, low blood pressure, tachycardia, and fatigue" beginning in 2011. Tr. 16. The ALJ observed Woodle has "sought treatment for her headaches, syncope, and lightheadedness with various providers." Tr. 17.

---

[6] The SSA uses the listing of impairments to determine impairments severe enough to prevent gainful activity. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).

[7] A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The SSA uses the RFC at step four to decide if the claimant can perform any past relevant work and, if not, at step five with other factors to decide if there are other jobs in significant numbers in the national economy she can perform. 20 C.F.R. § 404.1545(a)(5). The "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

The ALJ noted that a doctor has "'reassured [Woodle] that she is very healthy'" and she has been "counseled 'on the relationship between tension, anxiety, and physical manifestation.'" Tr. 16. The ALJ noted an entry from a doctor from the University of Toledo stating that Woodle had "'underwent an evaluation at Vanderbilt [University Medical Center] where they said they were not sure exactly what was wrong with her but they didn't think it was autonomic in nature.'" Tr. 17. The ALJ explained a doctor at Mayo Clinic described Woodle's symptoms as "very vague." Tr. 16. The ALJ observed Woodle has been treated with medication and currently now takes only baby aspirin and magnesium and potassium supplements. Tr. 18.

The ALJ rejected an opinion of Dr. Thompson that Woodle cannot work while seated for more than two hours during a workday and cannot work while standing or walking for more than one hour during a workday. Tr. 18. The ALJ explained Woodle had found Dr. Thompson on the internet, had driven five hours for an appointment with him, and had claimed she spent five hours with him, during which time he examined her and asked her questions but performed no tests except a "poor man's tilt table test." Tr. 18. The ALJ found Dr. Thompson's opinion "not well supported by medically acceptable techniques and is inconsistent with the other substantial evidence in the record." Tr. 18. As examples, the ALJ pointed to beliefs by doctors at Vanderbilt University Medical Center that Woodle's issues were not autonomic in nature, to a doctor's entry in March 2016 that "there is no clear diagnosis of dysautonomia" (i.e., a condition in which the autonomic nervous system does not work properly), and to radiological evidence showing normal findings. Tr. 18–19. The ALJ added that other factors weighed against Dr. Thompson's opinion, including that Woodle had seen him only once, that his entries document no abnormal neurological findings, and that he noted normal findings regarding her musculoskeletal system. Tr. 19.

The ALJ rejected a medical statement by William Solomon, M.D., in which he opined Woodle could work zero hours. Tr. 19. The ALJ explained Dr. Solomon's opinion is based on Woodle's "'self-assessment,'" which Dr. Solomon had had "'no means to verify.'" Tr. 19. The ALJ added that Dr. Solomon had recommended Woodle undergo a functional capacity examination. Tr. 19.

The ALJ gave limited weight to an assessment by Debra Troiano, M.D.—the state agency consultant—that Woodle could perform a reduced range of light work. Tr. 20. The ALJ explained, "The undersigned is sympathetic to the claimant's symptoms[] and ongoing treatment. Given the claimant's extensive treatment history, the undersigned has concluded that the claimant is limited to sedentary work. Thus, the undersigned assigns only limited weight to Dr. Troiano's assessment, though it does support the conclusion that [Woodle] is not as limited as Dr. Thompson concluded." Tr. 20.

The ALJ found the limitations in the RFC would account for Woodle's lightheadedness, near syncope, and headaches. Tr. 20. The ALJ further found additional limitations were unnecessary because the record demonstrated Woodle was "not limited further." Tr. 20. The ALJ pointed to evidence from March 2016 ("essentially normal findings" by treating neurologist, Arastoo Nabizadeh, M.D.); August 2016 (normal neurological, musculoskeletal, cardiovascular, respiratory, and gastrointestinal findings); April 2017 (some gastrointestinal findings but otherwise normal findings regarding Woodle's neck, neurological, respiratory, and cardiovascular systems); April 2017 (normal laboratory results with normal glomerular filtration rates); December 2017 (foot swelling but otherwise normal findings); December 2017 (blood pressure of 135/72; normal range of motion; no motor deficits; normal sensation; normal coordination; normal reflexes; and normal cardiovascular, respiratory, and gastrointestinal findings); January 2018 (normal EKG); January 2018 (normal chest x-rays); January 2018 (elevated blood pressure of 153/105 but normal neurological findings; no focal neurological deficits; normal motor

8

findings; normal sensation; normal range of motion; normal strength; and normal cardiovascular, respiratory, and gastrointestinal findings). Tr. 20.

The ALJ explained,

> [T]he undersigned has considered the combined effects of [Woodle's] impairments and that they can be greater than each of the impairments separately. These impairments have been considered when assessing the claim under the listings and other steps of the sequential evaluation process, including when assessing the claimant's [RFC]. However, the generally normal or mild findings upon examination and in the radiological evidence support the conclusion that the claimant's arrhythmia, pseudotumor cerebri, coronary artery disease and obesity do not preclude a reduced range of sedentary exertional work.

Tr. 20.

At step four, the ALJ found Woodle had been unable to perform her past relevant work as an accounting clerk during the pertinent period.[9] Tr. 20–21.

At step five, the ALJ found Woodle had been able to perform jobs of order clerk, document scanner, and surveillance-systems monitor during the pertinent period, and those jobs had existed in significant numbers in the national economy. Tr. 22. The ALJ relied on testimony of a vocational expert based on a hypothetical that mirrored the RFC.[10] Tr. 22, 50–53.

---

[9]"Past relevant work is work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough … to learn to do it." 20 C.F.R. § 404.1560.

[10]At step five, an ALJ must decide whether a significant number of one or more jobs that the claimant can perform exist in the national economy. 20 C.F.R. § 404.1566(b). An ALJ may use a VE's testimony for that determination. *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). For a VE's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes the claimant's impairments. *Id.* An ALJ is "not required to include findings in the hypothetical that [she] had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The ALJ therefore found Woodle had not been disabled during the pertinent period. Tr. 22.

### III. Standard of Review

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and alteration omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* "Substantial evidence … is more than a mere scintilla. … It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The substantial-evidence standard applies only to factual findings. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoted authority and alterations omitted).

IV. **Argument**

    Woodle argues:

> The Commissioner erred in failing to identify, evaluate, and consider the totality of [her] severe impairments, in ignoring the complete diagnoses/opinions/evaluations of [her] treating physicians, failing to assign appropriate evidenciary [sic] weight to the totality of [her] symptom presentation/impairments, and thereby proffering an inaccurate/incomplete hypothetical question to the vocational expert.

Doc. 12 at 11 (all caps omitted).

    The Commissioner responds:

> The [ALJ] applied the proper legal standards and reached findings supported by substantial evidence in evaluating [Woodle's] claim. [She] failed to prove she was disabled. Her treatment records generally show unremarkable diagnostic studies and physical examinations, and [her] own treating physician described [her] as "very healthy" during the relevant time period.
>
> The ALJ adopted limitations in the [RFC] finding that generously accommodated [her] impairments. Although [she] believes her diagnoses and treatment show she is more limited, her arguments merely request that the Court impermissibly reweigh the evidence. Accordingly, the ALJ's decision should be upheld.

Doc. 13 at 1.

V. **Law and Analysis**

    The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has the burden of providing evidence and proving disability. 20 C.F.R. § 404.1512(a); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

As authority, Woodle cites only the definition of disability and the law on the standard of review. *See* Doc. 12 at 11–14. The Commissioner argues that, "by making perfunctory contentions without citation to legal authority," she has forfeited her right to challenge the decision. Doc. 13 at 5.

In the scheduling order, the Court warned it will deem abandoned "any issue that the plaintiff does not raise or fully brief (i.e. provide more than just a summary contention) unless the interests of justice require its consideration." Doc. 9. Generally, an "issue must be plainly and prominently raised, with supporting arguments and citations to the evidence and to relevant authority." *Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 832 (11th Cir. 2016).

By citing the definition of disability and the law on the standard of review, Woodle adequately raises the issue of whether the finding of no disability is supported by substantial evidence. By failing to cite other law and delineate other issues, however, she abandons those issues.[11]

---

[11]Regardless, Woodle fails to show error. To the extent she argues the ALJ erred in failing to find more of her impairments had been severe at step two, she shows no harm. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). At step two, an ALJ considers whether a claimant has a severe impairment or combination of impairments.[11] 20 C.F.R. § 404.1520(a)(4)(ii). A finding of any severe impairment satisfies step two. *Moore*, 405 F.3d at 1213 n.6. Thus, an ALJ need not identify every severe impairment at step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). Here, the ALJ found Woodle had had severe impairments of arrhythmia, pseudotumor cerebri, coronary artery disease, and obesity during the pertinent period. Tr. 13. The ALJ then proceeded to the next steps. Tr. 13–22. Any error in failing to find that additional impairments had been severe is harmless.

To the extent Woodle argues the ALJ erred in failing to consider all her impairments whether or not severe in assessing the RFC, the argument fails. An ALJ must demonstrate he considered the claimant's impairments—severe and non-severe—in combination at step three and in assessing the RFC. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Here, the decision shows the ALJ considered all Woodle's impairments at step three and in assessing the RFC. *See* Tr. 15–20.

Finally, to the extent Woodle argues the ALJ erred in improperly weighing the medical opinions, the argument fails. An ALJ "must state with particularity the weight

12

Contrary to Woodle's position, the finding of no disability is supported by substantial evidence; i.e., there is "such relevant evidence as a reasonable mind might accept as adequate to support" the finding of no disability. *See Biestek*, 139 S. Ct. at 1154 (quoted).

The ALJ determined a restrictive RFC, finding Woodle had been able to perform sedentary work with numerous limitations during the pertinent period. Tr. 15 (performing only sedentary work; performing only simple, unskilled, repetitive work; climbing stairs only occasionally; avoiding ladders, ropes, and scaffolds; avoiding driving motorized vehicles; avoiding moving or hazardous machinery; and avoiding work around protected heights).

The RFC is supported by substantial evidence, including, as the ALJ found, unremarkable or normal findings throughout the medical record, conservative treatment, and Woodle's statements about her abilities. *See* Tr. 16–20 (ALJ's decision summarizing evidence); Doc. 13 at 8–12 (Commissioner's brief summarizing evidence described by ALJ to support RFC finding).[12] The ALJ properly relied on the vocational expert's testimony based on the hypothetical mirroring the RFC. Tr. 22, 50–53.

Woodle does not contest there are unremarkable or normal findings throughout the medical record. *See generally* Doc. 12. Rather, she complains the ALJ did not appreciate that she had visited numerous specialists in earnest to try to find relief for her symptoms, that no evidence suggested she had been malingering or had magnified her symptoms, and that most of the tests showing normal findings were

---

given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Here, the ALJ stated the weight he was giving the various medical opinions, including Dr. Thompson's opinion, and properly explained the reasons why. *See* Tr. 18–20; *see also infra.* 7–8 (summarizing ALJ's decision).

[12]See also the medical records at Tr. 275, 284, 288, 299, 300, 310, 317, 324, 378, 391–94, 414–28, 430, 477, 479, 575, 577, 580–81, 800, 971, 986, 1013, 1029, 1100–01, 1017, 1131–32, 1288, 1301, 1304, 1312, 1314, 1318.

13

designed merely to rule out causes of her symptoms to try to properly treat her. Doc. 12 at 14–15.

Woodle's complaint merits no relief. The decision shows the ALJ understood Woodle's case—the existence, legitimacy, and uniqueness of her impairments were not in question—and did not solely rely on tests showing normal findings. *See generally* Tr. 12–20. Because the finding of no disability is supported by substantial evidence, this Court must affirm even if evidence preponderates against the factual findings, *see Martin*, 894 F.2d at 1529, and this Court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the ALJ's judgment, *see Moore*, 405 F.3d at 1211.

## VI.  Recommendation

Because the ALJ applied the correct legal standards and substantial evidence supports his decision, I recommend:

(1)  affirming the Commissioner's decision;

(2)  directing the Clerk of Court to enter judgment under sentence four of 42 U.S.C. § 405(g) for the Commissioner and against Bridget Woodle; and

    (3)    directing the Clerk of Court to close the file.[13]

**Entered** in Jacksonville, Florida, on July 31, 2020.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    The Honorable Marcia Morales Howard
      Counsel of Record

---

[13] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

15